The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on August 6, 2018, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: August 6, 2018**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | Case No.: 12-34785 |
| | ) | |
| Nathan T. Knestrick and | ) | Chapter 13 |
| Christina M. Knestrick, | ) | |
| | ) | Adv. Pro. No. 18-3009 |
| Debtors. | ) | |
| | ) | |
| | ) | |
| Erin E. Stevens, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Nathan T. Knestrick, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**[1]

In this adversary proceeding, the plaintiff, Erin Stevens, ("Plaintiff") seeks a determination that an agreement the debtor-defendant, Nathan Knestrick, ("Debtor") made in 2001 to reimburse her for a portion of their daughter's college expenses is nondischargeable as a "domestic support obligation" under the Bankruptcy Code. For the reasons that follow, the court finds that Plaintiff has failed to establish by a preponderance of the evidence that this obligation is a nondischargeable debt.

---

[1] This opinion is not intended for official publication.

## JURISDICTION

The district court has jurisdiction over Debtor's underlying Chapter 13 bankruptcy case and all civil proceedings in it arising under Title 11, including this adversary proceeding. 28 U.S.C. § 1334(a) and (b). The Chapter 13 case and all proceedings in it arising under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. § 157(a) and General Order No.2012-7 entered by the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of particular debts are core proceedings that this court may hear and determine under 28 U.S.C. § 157(b)(1) and (b)(2)(I).

## PROCEDURAL HISTORY

Plaintiff commenced this adversary proceeding on January 22, 2018. Codebtor Christina M. Knestrick was dismissed as a defendant to the Complaint on March 2, 2018. [*See* Doc. # 10, p.3]. In an Order date June 26, 2018, trial proceedings in this adversary proceeding were reassigned to the undersigned judge. On June 26, 2018, the court held a trial on Plaintiff's dischargeability action. Plaintiff and Debtor were the only witnesses who testified at trial. The court admitted without objection redacted versions of Plaintiff's Exhibits 1-9 and Defendant's Exhibits A-G.

## FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the court's weighing of the evidence, including the credibility of the witnesses. In doing so, "the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the court considered the testimony of all the trial witnesses, exhibits admitted into evidence, and any stipulations. Unless indicated otherwise, the following facts were established at trial by a preponderance of the evidence or were stipulated to by the parties.

The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it); *United States v. Brugnara*, 856 F.3d 1198, 1209 (9th Cir. 2017) (stating that district court may properly take judicial notice of its own records).

Plaintiff and Debtor's daughter, Kaelynn, was born in 1996, and is now twenty-one years old. When

their daughter was born, Plaintiff and Debtor were ages nineteen and twenty, respectively, and were in a relationship together for approximately three years after her birth but were never married. The parties were both attending college, during which time Debtor paid Plaintiff child support in the amount of $280.00 per month.

In a Child Support Agreement ("Agreement") dated July 5, 2001, Plaintiff and Debtor set forth their obligations regarding their allocation of parental rights and responsibilities, including health insurance, daycare expenses, and Debtor's monthly child support obligation of $407.66, which they agreed would be increased by two percent each year. [Def. Ex. A, pp. 1-4]. The Agreement also includes a provision requiring the parties to each be responsible for one-half of the cost of tuition and room and board in the event their daughter would choose to attend college ("college expense obligation"). [*Id.* at 5].

On July 20, 2001, Plaintiff and Debtor attended an administrative hearing at the Lucas County Child Support Enforcement Agency ("CSEA") for the purpose of determining child support for Kaelynn. [Pl. Ex. 1]. By letter dated August 2, 2001, beginning "Dear Parent" and referring to Kaelynn Knestrick and Order No. AP96-1932, the CSEA stated:

> Establishment of paternity has been completed on this case on **September 27, 1996.**
>
> No child support order will be issued at this time for the following reason:
> **Parties have a private agreement**
>
> **Mandatory Health Care Order to issue**

[Pl. Ex. 1]. The letter then directs the parties to contact an investigator if they have any questions regarding the case. [*Id.*]. Neither the original Order No. AP96-1932 nor any order entered in 2001 by the CSEA are in evidence in this adversary proceeding.

In October 2008, Debtor filed for relief under Chapter 13 of the Bankruptcy Code. On Official Form 22C, then used to calculate a Chapter 13 debtor's disposable income, Debtor included his monthly support obligation under the 2001 Agreement as a deduction on line 33. Line 33 directs a debtor to enter as a necessary expense the total monthly amount that he is required to pay "pursuant to the order of a court or administrative agency, such as spousal or child support payments." [Pl. Ex. 9, p. 44]. Later, Debtor's Chapter 13 plan, which was confirmed by the court, indicates, with reference to 11 U.S.C. §101(14A), that there is no holder of any domestic support obligation. [Pl. Ex. 8, p. 1]. Debtor continued to pay his monthly support obligation outside of the plan during the Chapter 13 case.

On March 23, 2012, at Plaintiff's request, the CSEA entered Administrative Order for Child Support and Medical Support designated as a "Modified Order" of Order Number AP96-1932. [Def. Ex. C]. The

3

Modified Order sets forth CSEA's earlier finding that Debtor is the parent of Kaelynn E. Knestrick. [*Id.* at 1]. It then sets forth provisions for both child support and medical support. The order required Debtor to pay $807.70 per month for child support plus a two percent processing fee, for a total of $823.85 per month. [*Id.*]. The order further provides in relevant part:

> (D) The duty of support imposed pursuant to this order shall continue beyond the child's eighteenth birthday only if the child continuously attends a recognized and accredited high school on a full-time basis on and after the child's eighteenth birthday. The order shall not remain in effect after the child reaches age nineteen.
> . . .
>
> (E) The Child Support Obligor shall continue to pay any other existing orders which are not expressly modified herein.
>
> . . . .
>
> (J) Pursuant to ORC section 3121.45, any payment of money by the Child Support Obligor to the Child Support Obligee that is not made through Ohio Child Support Payment Central or the CSEA administering the support order shall not be considered a payment of support under the support order and, unless the payment is made to discharge an obligation other than support, shall be deemed to be a gift.

[*Id.* at 2]. The Modified Order includes no provision for the payment of college expenses. Neither party objected to the Modified Order. There is no dispute that Debtor has made all monthly payments required under the Modified Order. As a result of the increase in Debtor's support obligation under the Modified Order, he was no longer able to make his required Chapter 13 plan payments. Debtor's first Chapter 13 case was dismissed for lack of funding on August 29, 2012.

On October 22, 2012, Debtor filed his second petition for relief under Chapter 13 of the Bankruptcy Code. [Case No. 12-34785, Doc. # 1]. Debtor scheduled Plaintiff as both a creditor holding an unsecured priority claim for child support and an unsecured nonpriority claim for a "Potential Lawsuit," which he testified refers to Plaintiff's assertion that he owes her a debt relating to their daughter's college expenses. [*Id.* at 19 & 28]. Debtor's confirmed Chapter 13 plan required him to pay directly to Plaintiff all postpetition domestic support obligations owed to her. [Pl. Ex. 7, ¶ 4(b)]. It also provided for a pro rata distribution to general unsecured creditors. [*Id.* at ¶ 4(d)(2)].

On April 14, 2014. the CSEA entered revised Order No. AP96-1932, terminating child support and cash medical support for Kaelynn effective June 9, 2014, the date of her graduation from high school and a date after her eighteenth birthday. [Def. Ex. D, p. 2]. The order states that "[a]ll other orders, not herein specifically addressed shall remain in full force and effect until further order." [*Id.* at 3]. Neither party filed an objection to that order.

4

After their daughter graduated from high school, the parties discussed payment of her college expenses. Debtor estimated the cost of tuition, room and board at Miami University in Oxford, Ohio, to be approximately $25,000 per year. [Pl. Ex. 3]. Debtor suggested that he and Plaintiff each contribute $6,000 per year, for a total of $12,000 per year and that their daughter help with her share by obtaining scholarships and grants. [*Id.*; Def. Ex. G]. Plaintiff did not agree as Debtor's suggested terms varied from the terms of their 2001 Agreement. Although their daughter obtained scholarships and grants to reduce the costs of her four-year attendance at Miami University, she also incurred significant student loan debt. [*See* Pl. Ex. 4].

Debtor paid none of his daughter's freshman year college expenses. On August 24, 2015, Plaintiff filed a "Complaint to Show Cause for Enforcement of Private Child Support Agreement" in the Lucas County, Ohio, Court of Common Pleas Juvenile Division ("State Court"). [Def. Ex. E]. On February 12, 2016, the State Court granted Debtor's motion to dismiss the complaint, finding that the court lacked subject matter jurisdiction "over the terms of and/or the enforcement of the terms of a private agreement between parents regarding college education expenses, where such terms were never adopted by this court as its court order prior to the subject child's emancipation." [*Id.*; Def. Ex. F].

On January 4, 2018, the Chapter 13 Trustee filed her Final Report and Account in the underlying bankruptcy case, stating that Debtor's case was completed. [Case No. 12-34785, Doc. # 84]. On January 12, 2018, Debtor filed a certification stating that all domestic support obligations payable on or before January 8, 2018, have been paid. [*Id.,* Doc. # 89]. On January 22, 2018, Plaintiff commenced this adversary proceeding.

## LAW AND ANALYSIS

In her complaint, Plaintiff seeks a determination that an agreement Debtor made to reimburse her for a portion of their daughter's college expenses is nondischargeable as a domestic support obligation under 11 U.S.C. §523(a)(5). According to Plaintiff, the college expense obligation set forth in the parties' 2001 Agreement is in the nature of support and was adopted by a governmental unit, the CSEA, such that the obligation constitutes a domestic support obligation under 11 U.S.C. § 101(14A). Alternatively, Plaintiff argues that Debtor is judicially estopped from arguing otherwise. While Debtor agrees that the 2001 Agreement imposed a support obligation upon him, he contends that the Agreement was never adopted by the CSEA and was later superseded by the CSEA's 2012 Modified Order regarding child support.

**I. 11 U.S.C. § 523(a)(5)**

Section 1328(a) of the Bankruptcy Code governs dischargeability of debts in a Chapter 13 case

5

when the debtor completes all payments under the plan and certifies that all amounts payable that are due under a domestic support order have been paid. 11 U.S.C. § 1328(a). That subsection provides, with certain specified exceptions, that when such circumstances are satisfied "the court shall grant the debtor a discharge of all debts provided for by the plan. . . ." *Id.* The exceptions to discharge listed in § 1328(a) include debts of the kind specified in § 523(a)(5), which excepts from discharge any debt for a "domestic support obligation." 11 U.S.C. §§ 1328(a)(2) and 523(a)(5). A creditor bears the burden of proving by a preponderance of the evidence that a debt falls within this exception. *Grogan v. Garner,* 498 U.S. 279, 291 (1991); *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir. 1998).

A "domestic support obligation" is defined in relevant part as:

[A] debt that accrues before, on, or after the date of the order for relief in a case under this title . . . that is—

(A) owed to or recoverable by—
    (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; . . . .

(B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

    (i) a separation agreement, divorce decree, or property settlement agreement;
    (ii) an order of a court of record; or
    (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity. . . .

11 U.S.C. § 101(14A).

In this case, there was no assignment of debt to a nongovernmental entity. And although there was no evidence presented regarding their daughter's financial circumstances while she was in college, the court will assume for purposes of this opinion, and Debtor did not argue otherwise, that an individual's obligation to pay a portion of his child's college expense is in the nature of support. *Cf. Friedrich v. Friedrich (In re Friedrich)*, 158 B.R. 675, 683 (Bankr. N.D. Ohio 1993) (finding obligation set forth in separation agreement to pay ex-wife's college expenses to be in the nature of support); *Bush v. Bush (In re Bush)*, 154 B.R. 69, 70-71 (Bankr. S.D. Ohio 1993) (applying test set forth in *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103

6

(6th Cir. 1983), and finding debtor's obligation to make college assistance payments for his children's education to be in the nature of support); *see also In re Schumacher*, 495 B.R. 735, 744 (Bankr. W.D. Tex. 2013) (treating obligation set forth in divorce decree to pay adult children's college-related expenses as a domestic support obligation in the court's analysis under 11 U.S.C. § 707(b)(3)).

Nevertheless, as there is no dispute that the college expense obligation was not established by reason of a separation agreement, property settlement or other court order, Plaintiff's success in this case rises or falls on whether § 101(14)(C)(iii) is satisfied, that is, whether the college expense obligation was established by reason of applicable provisions of a determination by a governmental unit. The court finds that Plaintiff has failed to establish this by a preponderance of the evidence.

In support of her argument that the CSEA adopted the parties' 2001 Agreement and thus the provision regarding the college expense obligation, Plaintiff relies on the CSEA's letter dated August 2, 2001. However, the letter is not an order adopting the Agreement. It is simply a letter to the parties informing them of what action the agency was or was not going to take. While it refers to Order No. AP96-1932, which appears to be the original September 27, 1996, order establishing paternity that is referred to in the letter, it specifically states that no child support order would be issued because the parties have a private agreement, but that a mandatory health care order would be issued.

Moreover, the CSEA could adopt only provisions for which the agency had authority to address and determine. A *court* child support order may impose a duty of support beyond the child's eighteenth birthday if the parents have agreed to such support pursuant to a separation agreement that was incorporated into a decree of divorce or dissolution. Ohio Rev. Code § 3119.86(A)(1)(b) (emphasis added); *Tapp v. Tapp*, 105 Ohio App. 3d 159, 162 (1995) (explaining that a court may enforce a provision in a separation agreement providing for child support beyond the age of majority where such support consists of providing funds for the child's college education where the agreement is incorporated into a divorce or dissolution decree). However, the Ohio statute specifically provides that "[t]he duty of support to a child imposed pursuant to an *administrative* child support order shall continue beyond the child's eighteenth birthday *only if* the child continuously attends a recognized and accredited high school on a full-time basis on and after the child's eighteenth birthday." Ohio Rev. Code § 3119.86(A)(2) (emphasis added). Section 3119.86 was effective March 22, 2001, a date before the CSEA August 2, 2001, letter to the parties and before the July 20, 2001, administrative hearing. Because the college expense obligation consists of support beyond Kaelynn's eighteenth birthday, the CSEA lacked authority to adopt the parties' agreement regarding that obligation.

Based on the record in this adversary proceeding, the only support order issued by the CSEA was the

7

Modified Order issued in 2012, modifying Order No. AP96-1932. While the college expense obligation was part of the private support agreement originally negotiated by the parties, the support provisions of that Agreement were superseded by the CSEA's issuance of the Modified Order, which did not and, as discussed above, could not, include any obligation to pay for college expenses, as is indicated by the CSEA's order stating that Debtor's support obligations ceased on June 9, 2014. To the extent that Debtor later offered to pay for a portion of their daughter's college expenses is of no moment. The Modified Order specifically states that "any payment of money by the Child Support Obligor to the Child Support Obligee that is not made through Ohio Child Support Payment Central or the CSEA administering the support order shall not be considered a payment of support under the support order. . . ." [Def. Ex. C, ¶ J].

For the foregoing reasons, the court concludes that Plaintiff has failed to establish by a preponderance of the evidence that Debtor's college expense obligation set forth in the parties' 2001 Agreement constitutes a nondischargeable "domestic support obligation" under 11 U.S.C. §§ 101(14A) and 523(a)(5).

**II. Judicial Estoppel**

The United States Supreme Court has explained the equitable doctrine of judicial estoppel as follows: "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee,* 156 U.S. 680, 689 (1895)). While there are no "inflexible prerequisites," the Supreme Court identified several factors that guide the application of judicial estoppel, including "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* at 750-51. "Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion'" *Id.* at 705 (citations omitted).

In this case, Plaintiff points to the fact that Debtor included his monthly support obligation under the 2001 Agreement as a deduction on line 33 of Official Form 22C filed in his 2008 Chapter 13 bankruptcy case and that deductions on that line include only expenses required to be paid by order of a court or administrative agency. Debtor having so stated in 2008, Plaintiff argues that he is now judicially estopped from arguing that his obligations under the Agreement were not adopted by the CSEA and do not constitute a domestic support obligation under 11 U.S.C. § 101(14A).

While the more appropriate line of Official Form 22C on which to include Debtor's monthly support obligation under the Agreement would have been line 60, directing a debtor to list additional expenses

required for the health and welfare of his family, his failure to include the monthly support obligation on the proper line does not give rise to judicial estoppel. The purpose of the form is to calculate disposable income in order to determine the amount to be paid to unsecured creditors under a debtor's Chapter 13 plan. In obtaining confirmation of his Chapter 13 plan in the 2008 bankruptcy case, Debtor did not persuade the court to accept the manner in which he characterized the support obligation on Official Form 22C. Rather, the plan corrected the mischaracterization and, citing 11 U.S.C. §101(14A), indicates that there were no holders of any domestic support obligation, a statement consistent with Debtor's position in this proceeding. The court was not misled. Judicial estoppel simply does not apply.

### III. Equity and Fairness

During closing arguments, the attorneys for Plaintiff asked the court to use its equitable powers and find that the agreement Debtor made in 2001 to reimburse Plaintiff for a portion of their daughter's college expenses is nondischargeable as a "domestic support obligation" even if the agreement fails to fit within the precise definition of that term under the Bankruptcy Code. Unfortunately for Plaintiff, "§ 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.' " *Law v. Siegel*, 571 U.S. 415, 421 (2014), quoting 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013).

> Section 105(a) empowers the court to issue such orders as are "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. The statute "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000).

*In re Player*, No. 15-30759, 2015 WL 5885348, at *4 (Bankr. N.D. Ohio Oct. 7, 2015).

For better or for worse, not all moral obligations are legally enforceable. Moreover, even many legally enforceable obligations of chapter 13 debtors are dischargeable under the Bankruptcy Code. This includes obligations in divorce decrees that fall outside the definition of "domestic support obligation." *See* 11 U.S.C. § 1328(a) (excepting from discharge debts under § 523(a)(5), but not § 523(a)(15)).

On the other hand, nothing in the Bankruptcy Code prevents Debtor from voluntarily reimbursing Plaintiff for his share of their daughter's college expenses. *See* 11 U.S.C. § 524(f). Or, if Debtor cannot see through to reimbursing Plaintiff, he could at least voluntarily pay their daughter. True, Debtor has a separate "domestic support obligation" to another child. And Debtor and his wife have their own child and are expecting a second. But, due in part to Debtor's failure to pay anything toward Kaelynn's college expenses, his oldest daughter has incurred substantial student loan debt. As Debtor wrote in 2014: "I think that by both of us providing $6,000/year towards her tuition, that is more than most children get from their parents and I believe that Kaelynn appreciates us helping her." [Pl. Ex. 3]. In short, while any legal obligation may be

9

18-03009-maw    Doc 36    FILED 08/06/18    ENTERED 08/06/18 15:50:06    Page 9 of 10

discharged, nothing in the Bankruptcy Code prevents Debtor from voluntarily reimbursing Plaintiff or their daughter.

### **CONCLUSION**

For all of the foregoing reasons, Debtor's college expense obligation set forth in the parties' 2001 Agreement does not satisfy all elements of a "domestic support obligation" as defined under 11 U.S.C. § 101(14A), and Debtor is not judicially estopped from so arguing. Thus, Plaintiff has failed to establish by a preponderance of the evidence that Debtor's college expense obligation is a nondischargeable debt under § 523(a)(5).

The court will enter a separate judgment in accordance with this Memorandum of Opinion.

###